O
JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD WALKER,<br><br>                Petitioner,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>                Respondent. | Case Nos. 2:13-cv-4717-ODW<br>              2:12-cr-1059-ODW<br><br>**ORDER DENYING WALKER'S PETITION TO VACATE, SET ASIDE, OR CORRECT THE SENTENCE [1]** |

## I. INTRODUCTION

Petitioner Ronald Walker stole hundreds of individuals' Social Security numbers to apply for credit cards. (Plea Hr'g Tr. 21:19–22.[1]) From 2008 to October 3, 2012, Walker, a college graduate, outsmarted and defrauded countless banks—including Citibank, Capital One, Bank of America, and American Express—by making purchases, withdrawing cash from ATMs, and writing convenience checks. (*Id.* at 21:18–22:3.) In total, Walker and his co-conspirators opened 575 fraudulent credit-card accounts and attempted to open 150 more, and had at least 40 credit cards mailed to his apartment. (Crim. Compl. ¶ 4.[2]) Walker's actions caused banks to lose $532,000, which does not include the intangible losses inflicted on Walker's identity-theft victims. (*Id.*)

---

[1] *United States v. Walker*, Case No. 2:12-cr-1059-ODW, ECF No. 69 (argued Mar. 13, 2013, filed August 24, 2013).

[2] *United States v. Walker*, Case No. 2:12-cr-1059-ODW, ECF No. 1 (filed Oct. 1, 2012).

On March 13, 2013, at his change-of-plea hearing, Walker plead guilty in accordance with a plea agreement. Walker pled guilty to conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. (Sentencing Hr'g Tr. 4:16–20.[3]) Then, on May 20, 2013, the Court sentenced Walker to 78 months imprisonment and required him to pay $515,659.38 in restitution. (*Id.* at 27:20–21; 29:2–6.) Walker now petitions to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. (ECF No. 1.) Walker contends that his attorney, Richard Barnwell, rendered ineffective assistance of counsel during the change-of-plea and sentencing phases of his case. (Pet. 5.) For the following reasons, the Court **DENIES** Walker's Petition.[4]

## II. LEGAL STANDARD

A petitioner claiming ineffective assistance of counsel must make a two-fold showing. He must demonstrate that (1) his counsel's actions were outside the wide range of professionally-competent assistance, and (2) the petitioner was prejudiced by his counsel's actions. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An ineffective-assistance-of-counsel claim will fail unless both prongs are established; a district court need not address both prongs of the *Strickland* test if the petitioner makes an insufficient showing on one. *Id.* at 697.

Under the competent-assistance prong of this test, "counsel is strongly presumed to have rendered adequate assistance" and exercised reasonable professional judgment in all significant decisions. *Id.* at 690. Because counsel is afforded wide discretion when providing assistance, the petitioner must overcome the presumption that the "challenged action might be considered sound trial strategy." *United States v. Bosch*, 914 F.2d 1239, 1244 (9th Cir. 1990) (internal quotation marks omitted).

---

[3] *United States v. Walker*, Case No. 2:12-cr-1059-ODW, ECF No. 70 (argued May 20, 2013, filed August 24, 2013).

[4] After carefully considering the papers filed with respect to this Petition, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Further, the Court deems an evidentiary hearing for Walker's claims unnecessary as this matter is ultimately an issue of credibility that can be "conclusively decided on the basis of documentary testimony and evidence in the record." *Shah v. United States*, 878 F.2d 1156, 1158–59 (9th Cir. 1989).

Indeed, to find that counsel's assistance was outside the wide range of professionally-competent assistance, an error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687–88. To that end, "[t]actical decisions that are not objectively unreasonable do not constitute ineffective assistance of counsel." *Hensley v. Crist*, 67 F.3d 181, 185 (9th Cir. 1995) (given weight of evidence, the decision to agree to stipulated facts at trial in hope of reversal was found to be reasonable tactical decision).

In addition, the petitioner must satisfy the prejudice prong of the *Strickland* test by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." There is no prejudice if the absence of the alleged error would not have created any benefit; for example, there is no prejudice if a motion, which a petitioner alleges should have been raised, would have failed regardless. *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982) (no prejudice from failure to move for dismissal of counts of the indictment because the counts were not defective as a matter of law).

### III. DISCUSSION

Walker rests his claim for ineffective counsel on five grounds. He contends that Barnwell (1) submitted a fraudulent plea agreement; (2) failed to remove himself from the case per Walker's request; (3) filed fraudulent documents with the Court representing that he discussed evidence with Walker prior to the sentencing hearing on May 20, 2013; (4) misinformed Walker as to whether he would receive credit for cooperating with the government; and (5) forced Walker to admit at the sentencing hearing that he viewed certain evidence. (Pet. 5.) The government responds that Walker's claims are self-serving and meritless because they plainly contradict the record and Barnwell's declarations. (Opp'n 4.)

The Court now reviews each of his five grounds in light of the record.

**A.   Plea agreement**

Walker first alleges that his attorney "submitted a fraudlent [sic] plea agreement." (Pet. 5.)  He also maintains that Barnwell told him that his signature would be transferred onto "whichever plea [Walker] decided upon." (*Id.*)  In essence, Walker argues that Barnwell coerced him into signing a plea agreement. (*Id.*)

But the facts contradict Walker's assertion that Barnwell hastily sought his signature to just "get something to [the] U.S. Attorney." (*Id.*)  First, Barnwell reviewed—"line by line"—different versions of the plea agreement with Walker, including the final one that was filed with the Court. (Barnwell's Resp. to Interrogs. 1:18–26.)  And when the Court asked Walker whether he personally signed the plea agreement, whether he read it before signing it, and whether his attorney answered questions he had about the plea agreement, Walker replied—to each question—"yes, your Honor." (Plea Hr'g Tr. 35:9–20.)  Nothing about Walker's recount of events suggests that his decision to enter into the plea agreement was not "voluntary, knowing, or intelligent." *Washington v. Lampert*, 422 F.3d 864, 873 (9th Cir. 2005).

During the change-of-plea hearing, Walker indicated that he was well aware of the agreement he signed.  Walker conceded that although he initially thought he had several plea agreements to choose from, he learned that "there was only one [option]" and that he planned to accept it. (Plea Hr'g Tr. 12:12, 13:14.)  These statements contradict Walker's assertion that he was choosing between multiple plea agreements. (Pet. 5.)  In fact, Barnwell went over the differences between the old and new plea agreements twice with Walker and verified that Walker felt comfortable signing the final agreement. (Plea Hr'g Tr. 42:14–19.)  And the Court meticulously explained to Walker the mechanics of his sentencing and his plea agreement. (*Id.* at 30:17–41:10.)

Based on this record, the Court finds that Barnwell ensured that Walker knowingly signed the final agreement submitted to the Court.  The Court is satisfied that Walker entered into the plea agreement voluntarily and understood the terms of

the bargain. Walker's accusation that Barnwell submitted a fraudulent agreement is void of any factual support from the record. *See Washington*, 422 F.3d at 873 (rejecting petitioner's ineffective-counsel claim because the record suggested that his attorney diligently negotiated a plea bargain and the court carefully explained the rights he had agreed to waive).

**B.     Removal of counsel**

Next, Walker insists that Barnwell never removed himself as counsel per Walker's request. (Pet. 5.) Walker states that on March 26, 2013, he asked Barnwell to remove himself from the case. (*Id.*) Barnwell then allegedly said that he would "place [defendant's] case as not important" unless Walker paid him $5,000. (*Id.*)

While it is undisputed that Walker asked Barnwell to remove himself from the case, Barnwell contends that he neither required Walker to pay him $5,000 nor threatened to de-prioritize the case. (Barnwell's Resp. to Interrogs. 2:14–17; 3:2–6.) Instead, Barnwell took steps to address Walker's grievance—he asked Walker to put his request in writing so that he could file it with the Court, and he informed Walker that he could fire him instead of requesting his removal. (Barnwell's Resp. to Supp. Interrogs. 1:19–2:2.)

Walker's arbitrary assertion—that his attorney demanded that he pay $5,000—is also at odds with both individuals' actions throughout the case. For instance, Walker affirmed to the Court that he was satisfied with his attorney at his change-of-plea hearing, and Barnwell remained Walker's attorney through the sentencing hearing on May 20, 2013. (Plea Hr'g Tr. 50:1–19.) Prior to his Petition, not once did Walker indicate any disapproval with his representation. Conclusory allegations not supported by specific facts in the record will not warrant habeas relief. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). Walker's allegations of monetary demands and threats are not only conclusory, but also conspicuously absent from the record. These retaliatory allegations against Barnwell fail to show how Barnwell acted outside the scope of competent assistance.

## C. Fraudulent documents

Walker next asks the Court to consider whether Barnwell submitted fraudulent documents to the Court. In his Petition, Walker insists that he "never saw evidence or anything regarding [his] case before sentencing" and to date, "ha[s] still not seen anything" regarding his case. (Pet. 5.)

This sweeping declaration cuts against statements on the record from both Walker and Barnwell. During the change-of-plea hearing, the Court confirmed that Barnwell had reviewed the facts of the case and the evidence with his client. (Plea Hr'g Tr. 43:4–18.) Walker did not contest these statements. Notably, Walker affirmed that his attorney had fully advised him concerning his case. (*Id.* at 50:14–16.) Barnwell also reviewed discovery with Walker both in person and over the phone. (Barnwell's Resp. to Interrogs. 3:23–4:4.) Furthermore, considering that Barnwell met with Walker at least three more times after March 4, it is impossible that the last time Walker met with his attorney to discuss the case was on March 4, 2013. (Barnwell's Resp. to Supp. Interrogs. 2:5–10.) Walker's argument—that he has "not seen anything" regarding his case—is greatly exaggerated. (Pet. 5.)

Even if Walker did not review evidence regarding his case between his change-of-plea hearing and the May 20, 2013 sentencing hearing, this does not have any bearing on the Court's Judgment. At the change-of-plea hearing, Walker pled guilty. The Court did not need any new evidence to hand down the sentencing on May 20, 2013. Based on these facts, the Court concludes that Walker's argument has no merit.

## D. Receipt of credit

Walker also contends that Barnwell told him that he would receive credit for his cooperation with the government. (Pet. 5.) Yet, Walker argues, he received no such credit. (*Id.*)

This allegation does not demonstrate ineffective counsel. In *Shah*, the petitioner failed to prove that his counsel misled him about government credit because he agreed that no promises had been made by the government and the Court would

1 need to consider a probation report before determining the sentencing. *Shah*, 878 F.2d
2 at 1159. While Barnwell did explain that it was possible to receive credit by
3 cooperating with the government, there is no evidence he never made any guarantees
4 or promises. He explained to Walker that it was ultimately within the prosecutor's
5 discretion to reward Walker credit for his cooperation. (Barnwell's Resp. to Interrogs.
6 5:9–19.) An inaccurate prediction of a sentence is not necessarily grounds for an
7 ineffective-counsel claim. *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir.
8 1990) (finding that counsel's inaccurate prediction of 12-years imprisonment, as
9 opposed to 15 years, did not constitute ineffective assistance of counsel). Because
10 Barnwell did not even approach this level of error, Walker's argument fails.

11 Nor did the Court speak in such absolutes to Walker. The Court informed
12 Walker that his "sentencing range may be higher than [he] had anticipated." (Plea
13 Hr'g Tr. 33:23–24.) Nowhere did the Court explicitly promise Walker that he would
14 receive credit for cooperating with the government. Once again, the disparity between
15 Walker's allegations and the record suggests that Walker's arguments are not
16 grounded in fact or law, but rather in his own disappointment in his sentence.

**E.    Admissions at sentencing hearing**

Finally, Walker contends that "on sentencing day [my] attorney sat behind me
and cajoled me to say yes to Judge when asked about had I seen evidence." (Pet. 5.)
But this cannot be correct; it was during the change-of-plea hearing—not the
sentencing hearing—that the Court asked Walker whether he viewed the evidence of
his case. At the change-of-plea hearing, Barnwell confirmed that he reviewed the
evidence of the case with his client, and Walker did not make any effort to suggest
that he was being "cajoled" or forced to lie. (Plea Hr'g Tr. 43:4–18.) Without more,
this argument has no merit.

## IV.    CONCLUSION

After combing the record for facts relating to Walker's allegations, the Court
concludes that this is nothing more than buyer's remorse. The Court finds nothing in

the record suggesting that Barnwell rendered ineffective assistance of counsel. Accordingly, Walker's Petition is **DENIED** and is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

October 8, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**